**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 11-21163-CIV-GOODMAN**

**[CONSENT CASE]**

MIAMI YACHT CHARTERS, LLC,
and ALBERTO LAMADRID,

      Plaintiffs,

v.

NATIONAL UNION FIRE
INSURANCE COMPANY OF
PITTSBURGH PENNSYLVANIA,

      Defendant.

_____/

**ORDER DENYING DEFENDANT'S MOTION**

**TO "CORRECT" THE RECORD**

In the well-known "No Surrender" song released on his "Born in the U.S.A." album, Bruce Springsteen noted, "Well, we made a promise we swore we'd always remember, no retreat, baby, no surrender."[1] Springsteen's "no surrender" philosophy may be fine for a rock and roll song about the importance of being true to one's own dreams and beliefs, but it is frequently unhelpful in litigation. It is particularly inapplicable and inappropriate here.

---

[1]     (Columbia 1984).

1

Defendant's motion to "correct" the record [ECF No. 198] appears to enthusiastically embrace a "never-give-up" approach to litigation. But, as outlined below, National Union Fire Insurance Company of Pittsburgh Pennsylvania's ("National Union") motion is the insurance carrier's latest attempt to attack, challenge and seek to circumvent the Eleventh Circuit Court of Appeal's unequivocal holding, reversing a summary judgment entered in its favor on an undisputed factual record.

The Court must deny the motion.  Granting it would surely violate the appellate mandate. And it would effectively ignore the Eleventh Circuit's denial of Defendant's petition for panel rehearing. In addition, the motion is fundamentally at odds with this Court's prior post-appeal order. [ECF No. 191].

Basically, National Union is extremely unhappy with the Eleventh Circuit's ruling. While it is understandable for a litigant to be disappointed about an adverse ruling, that attitude by itself is insufficient to cause this Court to ignore the Eleventh Circuit's clear ruling. National  Union  is tenacious, to be sure. But the Undersigned is not persuaded by National Union's dogged, steadfast determination to again revisit the already-decided issue of whether Plaintiffs have met their threshold burden to establish that the cause of the damage to the vessel in question was fortuitous. That issue has been resolved -- and the Eleventh Circuit clearly and unequivocally confirmed that the issue is over and that Plaintiffs have met that burden.

Because the Court cannot rule or handle this case in a way which is contrary to the Eleventh Circuit's opinion and cannot violate its mandate, the Undersigned **denies** National Union's motion to correct the record.

I.      Facts and Procedural Background

National Union issued an all-risk marine insurance policy to Plaintiffs Alberto LaMadrid and Miami Yacht Charters, LLC. The insured vessel was damaged and Plaintiffs filed this lawsuit after National Union denied coverage. The parties filed cross-motions for summary judgment. The Court held an evidentiary hearing and initially denied both summary judgment motions. National Union then filed a motion for reconsideration, which the Court granted (and also granted the carrier's summary judgment motion). Plaintiffs then filed a Rule 59 motion to alter or amend judgment. After supplemental briefing and another hearing, the Court denied the Rule 59 motion.

At the hearing on Plaintiffs' Rule 59 motion, the parties specifically agreed that the relevant facts were undisputed. The Court specifically listed all the facts which were undisputed, and the Parties **all agreed that those facts were not in dispute**. The Parties did *not* say the facts were undisputed strictly for argument's sake or for purposes of the motion. Instead, they **stipulated that the relevant facts were, in fact, not in dispute**. One of the undisputed facts which the Court specifically noted -- and which the parties agreed to -- is that "at the time of this particular damage, the engine had less than 750 hours of use." [ECF No. 174, p. 5].

3

In granting National Union's summary judgment motion, the Undersigned concluded that Plaintiffs had not sufficiently demonstrated that the loss was accidental and fortuitous -- a requirement under the applicable case law. The parties agreed that accidental loss is synonymous with fortuitous loss, unless the loss is subject to an exclusion.

Plaintiffs took an appeal and they were successful. Given the arguments now raised by National Union, it is important to highlight some of the more-important features of the Eleventh Circuit's opinion. [ECF No. 221-1].

First, the appellate court framed the issue as whether the insureds "met their burden of establishing an accidental or fortuitous loss based on the undisputed facts." [*Id.* at p. 2]. The Eleventh Circuit answered its own question in the introduction: "we answer this query in the affirmative, and thus, reverse the District Court's entry of summary judgment in favor of National Union." [*Id.*].

The Eleventh Circuit restated the issue later in its opinion, explaining that, "since the parties have stipulated to the relevant facts," the one question on appeal was "whether the District Court correctly interpreted or construed the Policy to preclude coverage . . . ." [*Id.* at p. 10]. It then phrased the specific issue on appeal more precisely: "whether Appellants, insureds under the all-risk marine insurance policy, met their burden of establishing an accidental and fortuitous loss." [*Id.*]. The appellate court also

noted that "the interpretation of an insurance contract is a matter of law subject to *de novo* review." [*Id.*].

The appellate court also noted that the parties "**agreed** to a series of relevant and undisputed facts upon which the lower court based its legal rulings." [*Id.* at p. 4, n.2 (emphasis added)]. In the stipulated fact recitation, the appellate court succinctly noted that the engine had less than 750 hours of use. Other than this one reference, the term "750 hours" appears nowhere else in the 18-page opinion. [*Id.*].

In reversing the defense summary judgment in National Union's favor, the Eleventh Circuit unequivocally held that "based on the undisputed facts, . . . Appellants met their burden of demonstrating a fortuitous loss. More particularly, Appellants carried this light burden by presenting expert testimony on the cause of the engine's failure, namely the failure of the relief valve, and by establishing that the unexplained loss occurred well before the end of the engine's projected lifespan." [*Id.* at p. 14].

As a final illustration that the appellate court deemed the fortuity burden met (and therefore a closed issue), it explained that "[b]ecause we find that Appellants have **met their burden** of demonstrating an accidental and fortuitous loss under the Policy, the **burden** on remand **shifts** to National Union to establish the applicability of one or more of the Policy's exclusions." [*Id.* at p. 16 (emphasis added)].

The Eleventh Circuit then issued a letter formally advising the Parties (and the Undersigned) that the judgment was being issued as the Court's mandate. [ECF No. 188]. Following the mandate, the Undersigned held a status hearing. At the hearing, notwithstanding the Eleventh Circuit's opinion, judgment and mandate, National Union's counsel argued that the fortuity issue would be "a matter of evidence in the event that this goes to trial" and that fortuity "remains very much in play." [ECF No. 195, p. 5]. In taking that position, defense counsel argued that National Union's prior agreement as to the undisputed facts was "only for purposes of summary judgment" and that "everything was back in play." [ECF No. 195, pp. 8].

In light of defense counsel's comments at the status conference, the Court then issued an Order to clarify certain issues. In that Order, the Undersigned included the following:

1) **Plaintiffs have met their burden on whether there was an accidental and fortuitous loss.**

As noted by the Eleventh Circuit, the interpretation of an insurance contract is a matter of law. [ECF No. 188, p. 12]. Both parties stipulated to the relevant facts on summary judgment in this case, and the Eleventh Circuit found that Plaintiffs "**met the requisite burden** of demonstrating an accidental and **fortuitous** loss under the Policy . . . ." [*Id.* at p. 18]. As such, **this is no longer an issue in this case.** (emphasis added).

[ECF No. 191, p. 2].

II.     Defendant's Motion to "Clarify" the Record

Despite its title, National Union's motion does not actually seek to *correct* the record. Instead, it seeks one of two alternatives, and it says the Court "**must**" "do one or the other." [ECF No. 198, p. 3]. The first option, according to National Union, is to permit it to file a "renewed" summary judgment motion based on Plaintiffs' purported inability to show fortuity because the evidence concerning the relief valve's use for only 750 hours is inadmissible hearsay. National Union says the second option is to reopen discovery to "collect evidence" that would "rebut" the 750 hour figure -- the very evidence it stipulated to, the very evidence which formed the basis of the Eleventh Circuit's *de novo* legal contract interpretation ruling that Plaintiffs had already met their light burden to prove that the loss was fortuitous. [ECF No. 198, p. 3]. The Eleventh Circuit's opinion did not emphasize the 750 hours of use and it mentioned that number only once in its opinion. It held that Plaintiffs met their burden of demonstrating a fortuitous loss "by presenting expert testimony on the cause of the engine's failure, namely the failure of the relief valve, and by establishing that the unexplained loss occurred well before the end of the engine's projected lifespan." [ECF No. 221-1, p. 14].

Although National Union clearly stipulated to the facts as being undisputed, National Union now tries to downplay its stipulation by "confess[ing]" that it "did not object and did not attempt to submit any contrary evidence." [ECF No. 198, p. 16]. Of

7

course, National Union did far more than merely not *object* to the facts -- it affirmatively and unequivocally *stipulated* to them as being undisputed so that the Court could rule on the legal issue of whether Plaintiffs demonstrated fortuity.

National Union is also now trying to avoid the consequences of its stipulation by arguing that its "silence" about the 750 hours of use should not be held against it because the Eleventh Circuit "creat[ed] a wholly new rule of law." [*Id.* at p. 16]. According to National Union's motion, basic fairness requires that it not be bound by "mere stipulations" because "the 11th Circuit decide[d] to create a wholly new rule of law." [*Id.*]. It also says that the Eleventh Circuit "abused its discretion by considering the inadmissible evidence" -- i.e., the very evidence it stipulated to at the hearing. [*Id.* at p. 17].

National Union now also advances the theory that its prior stipulation was based on the assumption that all involved considered the "fact of 750 hours of use to be irrelevant" and that this fact "only became relevant after the 11th Circuit issued its decision announcing a new rule of law which was not applicable during any of the prior proceedings before this Court." [*Id.* at pp. 19-20]. And it says that the Court would abuse its discretion and "offend the most basic sense of fairness and equity" if it did not select one of the two so-called options and if it did not permit National Union to argue at trial that Plaintiffs had not in fact met their burden to establish that the cause of the damage was fortuitous. [*Id.* at p. 20].

8

So it is certainly clear that National Union takes issue with the Eleventh Circuit's ruling.  But that is the ruling which controls how this case will be handled on remand. Even if the Undersigned were inclined to agree with National Union's theory that the Eleventh Circuit's opinion is incorrect, the Court would still be duty-bound to follow the ruling and the mandate. *Piambino v. Bailey,* 757 F.2d 1112, 1119 (11th Cir. 1985) (trial court may not "alter, amend, or examine the mandate, or give any further relief or review, but must enter an order in strict compliance with the mandate").

Plaintiffs object to National Union's motion, branding it as "nothing more than a motion to recharacterize and reverse the Eleventh Circuit's holding in this litigation masquerading as a motion to correct the record." [ECF No. 221, p. 1]. Describing the Eleventh Circuit's ruling as "crystalline," Plaintiffs contend that National Union "refuses to accept that it LOST in the Eleventh Circuit" and urges the Court to impose sanctions against National Union. [ECF No. 221, pp. 1-2 (emphasis in original)]. In fact, it also suggests that the Court issue a show cause order and require defense counsel to show cause why he should not be held in contempt and to explain "why their counsel were permitted to file motions that express such contempt for the judiciary." [ECF No. 221, p. 8].

The Undersigned will not now issue a show cause order or impose sanctions on defense counsel. Plaintiffs made the request for these remedies in their response, but the Undersigned's briefing order did not allow a reply, so National Union has not had the

opportunity to argue against the requested show cause order or contempt finding. Nevertheless, Plaintiffs have accurately quoted and referenced arguments which National Union made to the appellate court. In its initial motion for rehearing, National Union did in fact compare the appellate court's decision to a scenario involving a medical malpractice issue: "It is as if a doctor diagnosed a broken leg, and then proceeded to treat the patient for measles." [ECF No. 221-4, p. 8]. And in its motion for rehearing en banc, National Union contended that the appellate court's reliance on a particular case is "absolutely baffling," and it argued that the panel's "inadequate treatment of the fortuity caselaw is cause for true dismay." [*Id.* at p. 10].

Notwithstanding National Union's rhetorical attacks on the Eleventh Circuit's opinion, its position that this Court "must" provide one of the two options because a failure to do so would be fundamentally unfair is unconvincing. In fact, in the Undersigned's view, providing the relief requested by National Union would be unfair to *Plaintiffs.* National Union was perfectly fine with the Parties' stipulation to the undisputed facts when it generated a summary judgment in its favor, but, now that the appellate court reversed the summary judgment and held that Plaintiffs have met their initial burden to demonstrate fortuity, it has changed its position and argues that the stipulation should be voided. This strategic switch implicates the judicial estoppel doctrine, which "generally prevents a party from prevailing in one phase of a case on an

argument and then relying on a contradictory argument to prevail in another phase."

*New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal quotation omitted).

National Union's forceful language about the relationship between the relief valve (which was fixed in the open position), the fortuity issue, and the amount of engine use (750 hours, as stipulated, or some other amount) has already been rejected by the Eleventh Circuit, both in the initial opinion and the order denying the motion for en banc review. National Union wants to back out of the stipulation upon which both this Court and the appellate court relied in order to argue that the relief valve failure was caused by something other than a fortuitous reason. **But the Eleventh Circuit has already rejected the argument.** Specifically, the appellate court explained, "to require Appellants to prove something more, such as the exact cause of the relief valve's failure, would be to require the insureds to prove the precise cause of the engine's failure or, stated otherwise, the 'cause of the cause' of the loss. Requiring an insured to prove that a loss arose from a covered peril with such specificity seems contrary to the aims of an all-risk insurance policy." [ECF No. 221-1, p. 14].

Despite the stipulation, the Eleventh Circuit's opinion and its order denying the motion for a rehearing en banc, National Union insists that "the fortuity issue cannot be considered closed." [ECF No. 196, p. 2]. But it *can* be considered closed -- because both the Eleventh Circuit and this Court have clearly ruled that the issue **is** closed. National Union has not logically explained how or why that issue can remain open

11

when the appellate court used such direct and straightforward language: "Having **found** that Appellants **met** the requisite burden of demonstrating an accidental and **fortuitous** loss under the Policy . . . ." [ECF No. 221-1, p. 18 (emphasis added)].

In the still-classic lyrics of Donna Summer, the now-deceased former queen of the 1970s disco boom, "enough is enough."[2]

The Eleventh Circuit's opinion and mandate are clear:  The appellate court has undoubtedly and expressly concluded that Plaintiffs *have* met their light burden to establish fortuity, based on an undisputed factual record. The Court understands that National Union considers the appellate ruling to be wrong (and condemns it in acerbic, vitriolic language). But it has not provided any legal reason why this Court should somehow act contrary to that ruling.

It lost at the Eleventh Circuit. It lost again at the Eleventh Circuit, when the appellate court denied its motion for a panel rehearing. It lost again here on remand, when the Court unmistakably and positively explained in a written order that the fortuity burden had been met and therefore was no longer a viable issue.

Neither the appellate court nor this Court ever authorized National Union to treat the fortuity issue as still "in play" after the reversal of the summary judgment. Likewise, neither the Eleventh Circuit nor the Undersigned said or did anything to

---

[2]      "No More Tears (Enough is Enough)," from the "On the Radio: Greatest Hits Volumes 1 & 2 album (1979 Casablanca).

suggest to National Union that it could re-open discovery to obtain evidence which might be linked to the fortuity issue which has already been established on a stipulation-generated undisputed factual record. And neither the appellate court nor this Court ever indicated to National Union that its factual stipulation was purely for discussion purposes or that it could later back out of the stipulation if the ruling were not to its liking.

Plaintiffs contend that "it is time for National Union to accept its fate and prepare for trial." [ECF No. 221, p. 4]. The Undersigned agrees, and therefore **denies** the motion. Therefore, instead of following Springsteen's "No Surrender" philosophy toward the fortuity issue, National Union might want to consider a litigation strategy for that already-resolved issue based on  singer Kenny Rogers' well-known musical advice in "The Gambler": "You've got to know when to hold 'em, know when to fold 'em, know when to walk away, and know when to run."[3]

The Eleventh Circuit's ruling folded the fortuity factor and National Union can no longer gamble on its chances of convincing a jury that Plaintiffs have not met this limited threshold burden. At trial, National Union is free to pursue *other* legally

---

[3]     From the album of the same name. (United Artists 1978).

available coverage exclusions and defenses -- but whether the cause of the damage was

fortuitous is not one of them.

     **DONE and ORDERED**, in Chambers, in Miami, Florida, this 9th day of

February, 2015.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to**:

All Counsel of Record